UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

MARK EKWEM

PLAINTIFF;

VS.                                                              5:08 CV 350 G RJ

CREATIVE CONCEPTS LEARNING

FACILITY, INC. AND

KARENA MABRY,

DEFENDANTS

_____/

MOTION FOR SUMMARY JUDGMENT

UNDER RULE OF CIVIL PROCEDURE 56 (b)

(DETERMINATIVE MOTION)

The defendants, Karena Mabry and Creative Concepts, the employers of Mark Ekwem make a motion for summary judgment against the plaintiff on two issues: 1. whether Mark Ekwem was exempted from coverage of the minimum wage and overtime wage provisions of 29 U.S.C. Sec. 201, et seq.; and in particular 29 U.S.C. Sec. 213 (a)(15); 2. Have the defendants breached their contract to plaintiff.

In support of their motion they state the following.

FACTS

1. Karena Mabry and Creative Concepts have filed affidavits acknowledging they employed Mark Ekwem, from 2003 to about March 25, 2007, when he was terminated.

2. Karena Mabry and Mark Ekwem's co-workers, Roderick Williams and Anthony Hooks, have filed affidavits explaining and describing Mark Ekwem's job as a "behavior tech" as the job of

night companion. See affidavit of Williams and Hooks, and Karena Mabry.

From 2003 to 2007, Mark Ekwem would arrive at 11PM (on weekends sometimes at 8PM) and Mark woud sit the night with a co-worker until 8AM. The two companions would sit in the living-room area of a home for mentally impaired patients through the night.

Their responsibility was to supply companionship services to the patients through the night hours, until 8AM when the patients were taken to a day care facility at 8AM in the morning.

During this night shift, the companions, always 2 as required by Florida Law, could watch television, read magazines, or whatever books they brought with them.

The only responsibility that the two companions had was to be available if any patient had an emergency during the night. If there was an emergency, the companions were to call 911 or the owner, as appropriate.

3. The only contractual promise Karena Mabry and Creative Concepts made to Mark Ekwem was to pay, at first, $7.00 an hour, and later, $8 an hour for each hour Mark Ekwem worked. See Affidavits of Karena Mabry, Roderick Williams, co-companion and supervisor of the companions, and Anthony Hooks, general supervisor.

4. From 2003 to 2007, Karena Mary, Pauline Mabry, Roderick Williams and Anthony Hooks made sure Mark Ekwem received his hourly wage, and that he had no complaints about his pay. In fact, he never complained until towards the end, when he was suspended by the State of Florida for a sexual abuse investigation.

5. The companions had no other duties unless they performed some incidental chores around the home. They certainly had no scheduled work program aside from companionship services. see Karena Mabry affidavit.

6. When the companions arrived to begin their shift, the housekeeping for the home was already done by other staff before the companions arrived. The patients were already fed and prepared for bed, and were in bed. The companions had no responsibility to do any of those tasks.

See Karena Mabry, Roderick Williams and Anthony Hooks attached affidavits.

7.   In his Rule 26 Disclosures, paragraph C,  plaintiff disclosed that he is only seeking about $634.00 in back wages.  From his pleadings, it appears these wages are for failure to pay time and a half overtime for hours in excess of 40 hours a week.

## MEMORANDUM OF LAW

This case squarely falls under the U.S. Supreme Court case Long Island Care At Home, LTD, et al. Petitioners, v. Evelyn Coke,  127 S. CT.  2339 (2007), decided June 11, 2007.

In that case a domestic worker who provided companionship services to elderly and infirm persons in home care sued a former employer claiming she was not paid minimum wages and overtime wages in violation of the Fair Labor Standards Act.

The U. S. Supreme Court concluded that the Department of Labor regulation which applied the "companionship services" exemption from minimum wages and maximum hour rules to services rendered by persons employed by third parties, as opposed to family or household of recipients was valid.

The U.S. Supreme Court pointed out that the Fair Labor Standards Act of 1938, Sec. 13(a)(15) created an exemption from the minimum wage or overtime wage provisions.  This exemption was by regulation extended under 29 C.F.R.  Sec. 552.3, 552.109(a) (7-1-06 Edition) to exempt persons employed by third parties as opposed to family or household.  (By the way, these regulations remained unchanged up to 29 C.F.R. Sec. 552.3, 552.109(a) (7-1-09 Edition).

Evelyn Coke even tried to argue that in addition to companionship services, she would sometimes do housekeeping or food preparation, but it was to no avail.

The definition of companionship services set out in 29 C.F.R. 552.6, 29 C.F.R. Ch. V (7-1-09 Edition) is broad and allows for the companion to do a wide range of incidental errands and house hold chores, including washing clothes and meal preparation.  Such workers still fall under

the definition of companionship services.

In the case of Mark Ekwem, he had practically no duties beyond merely being present and available as a companion on the night shift.

The U. S. Supreme Court concluded that such companionship services were exempted and not covered by the minimum wage requirements, nor the overtime pay rules.

Mark Ekwem previously brought suit in Lake County Small Claims Court for a separate agreement he had with Karena Mabry concerning the use and rental of his car. Those claims are res judicata, and were mostly barred by a Lake County Court in Final Judgment on 2 May 2008, in Case no 2007-Sc-4751. Consequently, Mark Ekwem should not be heard to try to bring in any allegations from that case to exaggerate his job description as a companion. That was a totally separate contract which was litigated by him in Lake County Court.

Since Mark Ekwem is not entitled to claim either the minimum wage, nor overtime, the only remaining , issue is whether he has alleged a State of Florida breach of contract claim.

The plaintiff has never alleged that defendants entered into a contract to pay overtime wages.

The defendants have sworn that the promised pay was $7.00 an hour and then later, $8 an hour, which they state they paid regularly in a timely manner for each hour he claimed.

## CONCLUSION

The defendants ask the court to issue a summary judgment:

1. Finding that Mark Ekwem as a domestic worker supplying companionship services was not covered by the minimum wage or overtime wage provisions.

2. Finding that no breach of contract has been alleged , pleaded, nor established and a Summary Judgment is issued denying the breach of contract action.

_[signature]_
Edwin R. Ivy, Attorney
Fl. Bar. no. 0273643
Box 3223, Orlando, Fl. 32802

407 841 2500
edivy@bellsouth.net

Certificate of Service

I certify that a true copy of the above was sent by electronic mail to Eric Frommer, 270 Waymont Court, Suite 110, Lake Mary, Fl. 32746, May 3, 2010.

_[signature]_
Edwin R. Ivy, Attorney

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

MARK EKWEM,

PLAINTIFF            CASE NO.:5:08-CV-350-WTH-GRJ

VS.

CREATIVE CONCEPTS LEARING

FACILITY, INC. , AND

KARENA MABRY,

DEFENDANTS

_____/

AFFIDAVIT IN SUPPORT OF SUMMARY JUDGMENT BY

KARENA MABRY, OWNER AND EMPLOYER

I, KARENA MABRY, THE OWNER OF CREATIVE CONCEPTS LEARNING FACILITY, INC. and the employer of Mark Ekwem from the year 2003 up to March 2007, after identifying myself and taking an oath do affirm the following facts regarding the employment of Mark Ekwem:

1. I, Karena Mabry, am a life long resident of Lake County Florida and presently run a business located at 1907 N. Orange Ave., Mt. Dora, Fl. 32757.

2. In 2003, I was running a corporation named Creative Concepts Learning Facility, Inc. which was a nursing home where mentally disabled clients would live at the home full time. This facility was located in Lake County, and it was licensed by the State of Florida and was supervised by the State of Florida. I still run this very same home located in the same place, with the same staff.

3. In 2003, Mark Ekwem, began to work with my company, and he was hired to be a companion on the night shift.   Mark Ekwem continued in that job up till March 2007.

4. The State of Florida required the group home to have two alert adults on the premises at

all times, even at night, in case there was an emergency, so that the night companions could call for help: fire, police, an ambulance or 911. Also, the two night companions had the owner's phone number to call, if there were any trouble.

5. Mark Ekwem, from 2003 to 2007, worked almost exclusively on the night shift with about ten other workers. Anthony Hooks, who was general manager, would rotate the workers to sit different night shifts. Each worker would generally arrive at 11PM on the night he was assigned to work and would sit in the lobby until 8AM at which time the patients were awakened and prepared to go to the daycare facility, Sunrise Arc- Adult Training Program, during the day. The patients were already prepared for sleep and in bed by the time the companions arrived to sit for the evening. There was seldom any other activity for the companions to perform during their shift. The patients had already been fed, and it was seldom necessary to make any conversation or to get a drink of water for the patients.

6. Sometimes on the weekends, the companions would arrive at 8PM and work to 8 AM.

7. During the shift, the companions could watch television, read magazines, or in the case of Mark Ekwem, he was free to do his school work for his courses he was taking.

8. Sometimes, Mark Ekwem, towards the end in 2007, would drive the patients to the daycare facility in the morning, where they had to be by 8:30 AM.

9. The word that we used in the employment contract to describe the job was "Behavior tech".

10. In the contract entered into with Mark Ekwem, he was promised an hourly wage which started out at $7.00 an hour but went up to $8.00 an hour.

11. While Mark was working there, Roderick Williams was a companion who often worked the night shift with Mark Ekwem from 2003 to 2007. Roderick Williams became supervisor of the night shift companions during this period of time.

12. Every week, each worker would be instructed to fill out a time card showing what hours he

worked, and to hand that time card to Roderick Williams who would take the time cards back to Anthony Hooks.

13. Anthony Hooks and Karena Mabry, would then review the hours worked and multiply those hours by $7.00 an hour or $8.00 an hour, as appropriate, and, every two weeks, they would issue a pay check to Mark Ekwem and the other night companions. There were about ten people who would rotate the night shift companion duties.

14. Roderick Williams as supervisor of the companion night shift would deliver the pay check to each worker and ask them to review it to see if they agreed with it before signing for it. He would ask them if they had any complaints, and make sure they double checked the amount.

15. From 2003 to 2007, I received no complaints from Mark Ekwem indicating that he did not receive his promised hourly wage. The fact that he continued to come to work further indicated that he was satisfied he was getting paid his promised weekly wage.

16. Mark Ekwem, over the years, kept track of his weekly wage. He would come to the office with any questions, and would produce copies of his work cards and his own records which he would refer to.

17. I always paid Mark Ekwem the promised wage in a timely fashion. The only complaints I ever received was toward the end when the State of Florida asked for him to be suspended while he was investigated for sexually abusing an patient. Ultimately, Mark was terminated. I believe he blamed his employer for his difficulties with the State of Florida.

18. Toward the end of his work in March 2007, Roderick Williams reported that Mark was filing false work cards claiming hours and even whole shifts that he never worked.

19. When Mark Ekwem came to the office and demanded payment for all of his last work cards, Pauline Mabry suggested that I should just pay him in order to avoid trouble. Mark Ekwem signed a receipt on March 25 2007 in which he stated that the balance due he was claiming for his wages was $1,419.00. See Attachment A. I subsequently paid

him all of this money, under protest, in order to settle all claims that he was making against me for back wages. At that point, I had paid Mark Ekwem not only for what he actually worked, but also for what he claimed( we believed falsely).

_____
Karena Mabry
address: P.O. Box 1978 Mt. Dora, FL 32757 32756
phone: 352-455-8044

State of Florida

County of Lake

Sworn to and affirmed before me on ~~April~~ May 3, 2010 by Karena Mabry who showed her driver's license.

_____
Notary Public

NOTARY PUBLIC STATE OF FLORIDA
COMM # DD0596117
EXPIRES 9/18/2010
L. REGINA THOMPSON

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

MARK EKWEM,

PLAINTIFF,                          CASE NO.: 5:08-CV-350-wth-GRJ

VS.

CREATIVE CONCEPTS LEARNING

FACILITY, INC., AND

KARENA MABRY,

DEFENDANTS

_____/

AFFIDAVIT OF RODERICK WILLIAMS

I, Roderick Williams, after taking an oath and identifying myself, swear to the following facts:

1. I was a co-worker with Mark Ekwem from 2003 through the time he left in 2007 at the Creative Concepts nursing home facility owned by Karena Mabry.
2. Mark Ekwem and I worked as night companions for the mentally handicapped patients at the Creative Concepts nursing home. We frequently worked on the same shift over the years. In about 2006, I became supervisor of the companions who worked at night, so I started reviewing all of Mark Ekwem's work cards and his pay checks.
3. As night companions, our job was to show up at about 11 PM and to sit in the living room of the facility until 8AM. We were free to watch television which we often did, and to read magazines. Mark Ekwem would read his school books. Two companions would be assigned to each night shift. Their job was to be there in case any emergency came up. They were to call 911, or the owner if there was any trouble or emergencies. The State of Florida required two adults to sit as companions at the facility through the night.

4. On the weekends, we would sometimes arrive at 8PM and leave at 8AM.

5. After I became supervisor of all the night companions, I would collect the hourly time cards and hand out the pay checks to each of the workers who sat as companions during the night shift.

6. Our job from 2003 to 2007, was solely to provide companionship services for the disabled patients during the night shift. As supervisor, I had a few extra responsibilities that Ekwem did not have.

7. When I handed out the paycheck to Mark Ekwem, I would have him check it out before signed for it to make sure there were no complaints.

8. I never received any complaints from Mark Ekwem until towards the end about not receiving his hourly pay as promised.

9. I complained to Karena Mabry and Anthony Hooks that Mark Ekwem was padding his hourly pay card, and as a result of that, Mark Ekwem and I had a serious argument.

10. At 8 AM the patients were taken out to a day care facility and our work was done.

Roderick Williams
address: 316 N. Disston Avenue Apt. 4, Tavares, Fl 32778
phone: 678-681-5604

STATE OF FLORIDA

COUNTY OF LAKE

Sworn to and affirmed before me on May 3, 2010 by Roderick Williams, who showed his driver's license as identification.

_____
Notary Public

NOTARY PUBLIC STATE OF FLORIDA
COMM # DD0596117
EXPIRES 9/18/2010
L. REGINA THOMPSON

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, DIVISION

MARK EKWEM,
PLAINTIFF,

CASE NO. : 5:08-CV-350=WTH-GRJ

VS.
CREATIVE CONCEPTS LEARNING
FACILITY, INC., AND
KARENA MABRY,
DEFENDANTS
_____/

AFFIDAVIT OF ANTHONY HOOKS

I, Anthony Hooks, after taking an oath identifying myself, swear to the following facts:

1. From 2003 to 2007, I was the general manager at Creative Concepts, a nursing home for mentally impaired patients who live full time at the facility.

2. I supervised Roderick Williams who was the supervisor of the companions who sat at night with the patients, and he was a companion who worked on the night shift as well.

3. Mark Ekwem and the other companions ( there were about 10) would take turns sitting up during the night shift, usually from 11PM to 8AM. The State of Florida required two adults on the premises at all times in case of an emergency. Mark Ekwem and Roderick Williams were companions during the period from 2003 to 2007.

4. The companions would arrive at 11PM. (on weekends sometimes at 8PM) and they would sit in the living room of the facility until 8AM. They could watch television or read, as long as they were alert and available if there were some emergency. They were to call 911 or the owner immediately, if there was a problem.

5. The companions were paid $7.00 and hour or $8.00 an hour after being there for a year or so.

6. I would collect work hour cards filled out by each worker, and then I would multiply

the hours claimed by $7.00 or $8.00 an hour as appropriate, and I would issue a paycheck every two weeks. I know Mark Ekwem was paid the hourly wage he was promised every week that he worked there. I made it my job to make sure he was paid.

7. I never received any complaints from Mark Ekwem that he was short on his pay, and I was always available to talk to Mark Ekwem if he had any complaints.

*[Signature]*

Anthony Hooks
address:_____
phone:_____

STATE OF FLORIDA

COUNTY OF LAKE

Sworn to an affirmed before me on ~~April~~ May 3rd, 2010 by Anthony Hooks, who showed his driver's license as identification.

*[Signature]*

Notary Public

ROBIN L. DAVIS
Notary Public - State of Florida
My Comm. Expires Mar 22, 2013
Commission # DD 865623
Bonded Through National Notary Assn.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

MARK EKWEM,

PLAINTIFF,

VS.   CASE NO: 5:08-CV-350 WTH GRJ

CREATIVE CONCEPTS LEARING

FACITLITY, INC. AND

KARENA MABRY

DEFENDANTS

_____/

AFFIDAVIT OF PAULINE MABRY

I, PAULINE MABRY, was the office manager of Creative Concepts in the period of 2003 to 2007, and after taking an oath I affirm the following facts:

1. I was the office manager at the live in nursing facility for infirm patients called Creative Concepts. Mark Ekwem worked as a companion on the night shift during that same period of time.
2. When Mark Ekwem had any question about his work such as when he would work or his pay, he would come by the office to ask questions.
3. I never received any complaints from Mark Ekwem about receiving his pay except in the end before he left.
4. After he was suspended during the State of Florida investigation, he came to the office claiming he was owed more pay. I paid him some money and asked him to give me a receipt showing the entire balance he claimed was due on his last pay cards. He filled out a receipt dated March 25, 2007 stating that he was owed $1419.00 as the balance owed to him. I advised Karena Mabry, my daughter, that she should pay it to avoid further trouble, even if it was not right.

5. I am familiar with the companion job that several workers took turns doing. The State of Florida required two adults to be present throughout the night, so the companions would would take turns sitting up in the living room just in case there was an emergency so they could call for help.

*Pauline B. Mabry*
Pauline Mabry
address: 1805 Jefferson Drive
PHONE NO. 352-331-9508

STATE OF FLORIDA

COUNTY OF LAKE

SWORN TO AND AFFIRMED BEFORE ME ON ~~APRIL 3~~ May 3rd, 2010 BY PAULINE MABRY WHO SHOWED ME HER DRIVER'S LICENSE.

NOTARY PUBLIC

ROBIN L. DAVIS
Notary Public - State of Florida
My Comm. Expires Mar 22, 2013
Commission # DD 865623
Bonded Through National Notary Assn.